# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

**In re:**
**MICHAEL GERALD SHAFFER,**                         Chapter 7
**JODI NICOLE SHAFFER,**
    **Debtors.**                                 Case No. 13-51380

**DULLES ELECTRIC & SUPPLY CORPORATION,**
    **Plaintiff,**
**v.**                                              Adv. P. No. 17-05018
**MICHAEL GERALD SHAFFER,**
    **Defendant.**

**In re:**
**DAVID EUGENE OSBOURN, JR.,**                      Chapter 7
**AUGUSZTINA JUDIT OSBOURN,**
    **Debtors.**                                 Case No. 13-51381

**DULLES ELECTRIC & SUPPLY CORPORATION,**
    **Plaintiff,**
**v.**                                              Adv. P. No. 17-05019
**DAVID EUGENE OSBOURN, JR.,**
    **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on cross motions for summary judgment. Plaintiff Dulles Electric & Supply Corporation ("Dulles Electric") reopened the bankruptcy cases of defendants, Michael Gerald Shaffer and David Eugene Osbourn, Jr., and filed separate complaints against each defendant initiating these adversary proceedings. Both complaints seek a declaratory judgment on the dischargeability of particular debts under essentially the same facts. The parties briefed the issues and waived oral argument; the Court took the matter under advisement. For the reasons set forth below, the Court holds as a matter of law that the debts to Dulles Electric that arose after the individual guarantors filed chapter 7 were not discharged in the individual guarantors' bankruptcy cases.

**FINDINGS OF FACT**

David Osbourn and Michael Shaffer were part owners of a business named "St. James Electric, LLC." Stip. ¶ 4.[1] In 2011, St. James Electric submitted a credit application to Dulles Electric to obtain credit for future purchases from Dulles Electric. Stip. ¶ 5. At the same time, Mr. Osbourn and Mr. Shaffer signed a Guaranty of Payment in which they guaranteed the debt owed to Dulles Electric by St. James Electric. Stip. ¶ 5.

On November 8, 2013, Mr. Osbourn and Mr. Shaffer each filed a chapter 7 bankruptcy case. Stip. ¶ 1. Each of them listed Dulles Electric as a creditor. Stip. ¶ 1. Each of them obtained a discharge of their debts on February 20, 2014. Stip. ¶ 3. Neither of them revoked or rescinded the Guaranty of Payment. Stip. ¶ 6.

After Mr. Osbourn and Mr. Shaffer each filed chapter 7, their corporation, St. James Electric, continued to operate. Stip. ¶ 7. Dulles Electric continued to sell materials to St. James Electric on credit or account. Stip. ¶ 7.

On March 6, 2015, St. James Electric filed chapter 7 bankruptcy. Stip. ¶ 8. It listed Dulles Electric as a creditor for a debt in the amount of $20,000. Stip. ¶ 9. No assets were available for distribution, and the chapter 7 case of St. James Electric was closed in May 2015. Stip. ¶ 9.

Dulles Electric asserts Mr. Osbourn and Mr. Shaffer remain liable to Dulles Electric for the debt for materials it sold to St. James Electric, after the co-owners filed their chapter 7 cases, based on the 2011 Guaranty of Payment. The parties agree that St. James Electric made the purchases after each co-owner filed chapter 7, but they disagree whether the co-owners were

---

[1] In both adversary proceedings, the parties filed joint stipulations of undisputed facts on October 16, 2017. Both stipulations track similar facts in reference to the defendant in each adversary proceeding. For clarity and ease of citation, the Court will cite to "Stip." followed by the paragraph number when referring to both stipulations of undisputed fact. In adversary proceeding number 17-05018, the stipulation was docketed at ECF docket number 5; in adversary proceeding number 17-05018, the stipulation was docketed at ECF docket number 6.

2

discharged of their personal liability for the postpetition corporate purchases. Mr. Osbourn and Mr. Shaffer contend the personal liability on the guaranty has been discharged for any purchases made by their corporation, even those made after their individual chapter 7 cases. Dulles Electric insists the personal liability on the guaranty was discharged only as to purchases made prior to the individual's chapter 7 bankruptcies, and the purchases made after their bankruptcies are postpetition debts for which the individuals remain personally liable under their continuing guaranty.

## JURISDICTION

The Court has jurisdiction over this bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. Determinations as to the dischargeability of particular debts are "core" proceedings within the meaning of 28 U.S.C. § 157(b)(2)(I).

## CONCLUSIONS OF LAW

The question in this case is whether the $32,413.51 outstanding balance on the debt to Dulles Electric is a *postpetition* debt for which Mr. Osbourn and Mr. Shaffer are liable based on their personal guaranty or a *prepetition* debt that was discharged by their 2013 chapter 7 discharge.

Dulles Electric argues that the $32,413.51 debt must be postpetition because the credit was extended after the guarantors filed their individual bankruptcy cases. More to the point, Dulles Electric argues that the individuals entered into a continuing guaranty, which means that the individuals guaranteed an unlimited series of transactions, each of which is a new debt. The liability on the continuing guaranty, Dulles Electric argues, did not arise until St. James Electric made a purchase, which is an independent transaction and a new debt.

3

Mr. Osbourn and Mr. Shaffer counter that debt based on a guaranty signed in 2011 is a prepetition debt because the personal guaranty was made prepetition and the liability stems from that prepetition guaranty.[2] Because the guaranty was made prepetition, at the time Mr. Osbourn and Mr. Shaffer filed chapter 7 bankruptcy, they had unmatured, contingent liability to Dulles Electric on that guaranty. Because the Bankruptcy Code allows unmatured and contingent liability to be discharged in chapter 7, the liability under the guaranty for the prepetition extensions of credit was discharged when the Court issued the discharge order for Mr. Osbourn and Mr. Shaffer. *See* 11 U.S.C. §§ 101(5); 727. Whether the liability under the continuing guaranty was discharged for postpetition purchases remains in dispute because it is not obvious if postpetition extensions of credit for new purchases for materials are unmatured and contingent liabilities as of the petition date.

According to the Fourth Circuit, the debt arises when the conduct which gives rise to the obligation arose. *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 201 (4th Cir. 1988) (looking to when the conduct giving rise to liability occurred to determine whether the claim is prepetition or postpetition). If the conduct arose prepetition, certainly the obligation is prepetition. Hence the debt *has* arisen.

The Bankruptcy Code defines two key terms in this dispute: "debt" and "claim." "The term 'debt' means liability on a claim." 11 U.S.C. § 101(12). In the bankruptcy context, "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

---

[2] Mr. Shaffer and Mr. Osbourn rely on cases which reason that a guaranty signed prepetition is a contingent liability and thus the debt for the guaranty is discharged even for postpetition extensions of credit, without distinction to the nature of the guaranty. *See, e.g.*, *Russo v. HD Supply Elec., Ltd. (In re Russo)*, 494 B.R. 562, 564–66 (Bankr. M.D. Fla. 2013); *see also In re Lipa*, 433 B.R. 668, 669–70 (Bankr. E.D. Mich. 2010).

4

secured, or unsecured." *Id.* § 101(5)(A).[3] Although the existence of a claim is determined by the Bankruptcy Code, the timing of the creation of the liability is determined by nonbankruptcy law. *See Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Products Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000).

This definition of debt and the timing of the liability are critical to what was discharged in Mr. Osbourn's and Mr. Shaffer's bankruptcy cases. Section 727(b) provides, inter alia, that "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b).

Consequently, the chapter 7 discharge in each of these bankruptcy cases discharged all of Mr. Osbourn's and Mr. Shaffer's *prepetition* liability on each right to payment, including liability on those rights to payment that were contingent and unmatured. The current dispute thus hinges on whether Mr. Osbourn's and Mr. Shaffer's liability on Dulles Electric's right to payment for postpetition extensions of credit to St. James Electric existed prepetition. If the liability existed prepetition, the debt was discharged. If the liability arose postpetition, the debt was not discharged.

*Nature of the Guaranty*

Dulles Electric asserts that Mr. Osbourn and Mr. Shaffer are liable for the balance owed on the postpetition extensions of credit based on the prepetition signing of a guaranty of payment. The Supreme Court of Virginia "has defined a guaranty as 'an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform.'" *McDonald v. Nat'l Enters., Inc.*, 547 S.E.2d 204, 207 (Va. 2001)

---

[3] "Claim" may also mean "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5)(B). The salient definition in this case is the definition under section 101(5)(A) quoted above.

5

(quoting *B.F. Goodrich Rubber Co., Inc. v. Fisch*, 127 S.E. 187, 188 (Va. 1925)).  That is not all. The guaranty may be restricted or it may be continuing.

The distinction between a "restricted guaranty" and a "continuing guaranty" matters in a bankruptcy case.  *See, e.g.*, *Nat'l Lumber Co. v. Reardon (In re Reardon)*, 566 B.R. 119, 127–28 (Bankr. D. Mass. 2017) (addressing whether a discharge in bankruptcy of a guarantor who signed a guaranty prepetition extinguished the personal liability of the guarantor on postpetition extensions of credit); *McClure-Johnston Co., Inc. v. Jordan (In re Jordan)*, Adv. P. No. 05-1134-DHW, 2006 WL 1999117, at *2–*3 (Bankr. M.D. Ala. June 16, 2006) (same).

"A restricted guaranty is one that concerns a single or limited number of specific transactions."  *Reardon*, 566 B.R. at 127.  The guaranty of a retail installment contract, for example, would be a restricted guaranty.  The foil for the restricted guaranty is the continuing guaranty.

> A continuing guaranty is a contract pursuant to which a person agrees to be a secondary obligor for all future obligations of the principal obligor to the obligee. A continuing guaranty is terminable, and may be terminated by the continuing guarantor by notice to the obligee.  Upon termination of a continuing guaranty, the continuing guarantor remains a secondary obligor with respect to obligations of the principal obligor incurred prior to termination and becomes a secondary obligor with respect to obligations of the principal obligor incurred by extensions of credit to the principal obligor after termination pursuant to a commitment that became binding before termination.  Otherwise, the continuing guarantor does not become a secondary obligor with respect to any obligations incurred by the principal obligor after termination.

Restatement (Third) of Suretyship & Guaranty § 16 (Am. Law Inst. 1996); *see also Reardon*, 566 B.R. at 127 ("A continuing guaranty, on the other hand, is one that simply makes the credit of the guarantor available for unspecified future transactions, akin to a line of credit or revolving credit account.").  Under a continuing guaranty, "[e]ach loan transaction is considered a separate,

6

unilateral contract. Hence, the contingent liability arises at the time of the loan as opposed to the time the guaranty is executed." *Jordan*, 2006 WL 1999117, at *3.

The guaranty in this case provides that "[a]s a material inducement for" Dulles Electric to extend credit to St. James Electric Mr. Osbourn and Mr. Shaffer

> hereby jointly and severally, individually, absolutely, unconditionally, personally guarantee the full and immediate payment to [Dulles Electric] of any and all sums which may become due and payable to [Dulles Electric] by [St. James Electric], for any and all materials, supplies, and equipment charged on Account, or other sums accrued thereon by [St. James Electric], its employees or its agents. . . . .
> It is specifically understood and agreed that this Guaranty is a Guaranty of Payment and not a guaranty of collection.

(ECF Doc. No. 1). The guaranty is a guaranty of payment. As such, Mr. Obsourne and Mr. Shaffer are more akin to co-signers: they agree that the creditor may look to them for payment of the obligation without first seeking payment from St. James Electric. As well, the guarantor will be liable for the future obligations incurred by the primary obligor. Based on the language of the guaranty and the nature of the associated credit application, the Court concludes that the guaranty is a continuing guaranty.

*The Transactions*

The transactions at issue are purchases St. James Electric made from Dulles Electric on credit or account, from 2013 after the defendants' had filed chapter 7 bankruptcy through 2015. St. James Electric failed to pay for the purchases and then filed its own chapter 7 bankruptcy in 2015.

Some courts consider if transactions could have been anticipated and therefore would have been contingent and unmatured rights to payment that would have been discharged in the bankruptcy. *See, e.g.*, *In re Nat'l Gypsum*, 139 B.R. 397, 408 (N.D. Tex. 1992) (employing a "fair contemplation" test to determination of an environmental claim). In contrast, the Fourth Circuit

7

applies the "conduct test" even to a non-tort action to determine when the obligation arose. *See Holcombe v. US Airways, Inc.*, 369 F. App'x 424, 428 (4th Cir. 2010) (citing *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 200 (4th Cir. 1988)).

### *The Conduct*

This Court will follow the Fourth Circuit and employ a "conduct test" to figure out when the obligation occurred, and hence when the personal liability arose. For purposes of this case, if the conduct which gave rise to the obligation occurred before Mr. Osbourn and Mr. Shaffer filed bankruptcy, the liability on that obligation was discharged even if some of the transactions for which they would be obligated occurred after they filed bankruptcy. On the other hand, if the conduct which gave rise to the obligation occurred after their bankruptcy, the liability on that obligation was not discharged. In other words, if the obligation was postpetition, Mr. Osbourn and Mr. Shaffer would be liable for it.

> *Is the conduct which gives rise to the obligation the signing of the guaranty or the extension of credit and default for which the guaranty was made?*

Some courts have concluded that the conduct is postpetition if contractual transactions occurred postpetition. Logically, the conduct which gives rise to the contractual obligation can only occur if credit is extended and a default occurs. Absent the extension of credit and a default, the primary obligor and thus the guarantor have no actual contractual liability. Put differently, if no credit is extended, no obligation to pay exists. In this way, the signing of a guaranty cannot by itself obligate the guarantor for credit if the credit is never extended. *See In re Brand*, Civ. No. TDC-16-2882, 2017 WL 4162248, at *4 (D. Md. Sept. 19, 2017) (citing *Weeks v. Isabella Bank Corp. (In re Weeks)*, 400 B.R. 117, 124 (Bankr. W.D. Mich. 2009)). This principle is crucial when the guaranty is revocable or terminable. *See id.* (noting that the pre-bankruptcy signing of a guaranty did not create a right to payment, even a contingent right to payment, for purchase orders

8

that had not yet been made because the debtor could have terminated the guaranty at any time prior to the purchases).

Other courts find the conduct is prepetition simply because the guaranty was signed prepetition. *See, e.g.*, *Russo v. HD Supply Elec., Ltd. (In re Russo)*, 494 B.R. 562, 564–66 (Bankr. M.D. Fla. 2013); *In re Lipa*, 433 B.R. 668, 669–70 (Bankr. E.D. Mich. 2010). These courts find the guaranty is contingent and unmatured because it only obligates the guarantor if the other party (the maker) defaults; so the guaranty is contingent in the natural sense of the word. These cases assume the contingency is the future default on existing right to payment, not that the contingency is the extension of new credit.

All of this means that it is not enough that the guaranty is signed prepetition if there is no ascertainable liability to guarantee. As explained above, a restrictive guaranty will establish a right to payment for future credit based on the specific transaction with ascertainable terms. *See Reardon*, 566 B.R. at 128–29 (guaranty of construction loan project found to be a restrictive guaranty). Under a continuing guaranty, it is unknown what future extensions may be made and thus the liability as of the signing of the guaranty is not ascertainable. For these reasons, the continuing guaranty signed prepetition, while establishing a right to payment on current or committed rights to payment, did not create the liability for extensions of credit yet to be entered into or contemplated.

*Under the continuing guaranty, the contingent right to payment did not arise until purchase orders had been made.*

In this case, Mr. Osbourn and Mr. Shaffer signed a continuing guaranty. They did not revoke the guaranty or terminate the guaranty. When St. James Electric requested and Dulles Electric agreed to extend credit to St. James Electric after November 2013, the right to payment

9

for that credit arose. Because they signed a continuing guaranty, Mr. Osbourn and Mr. Shaffer did not at the petition date have liability for extensions of credit for purchases not yet contemplated or committed to be made. Under a continuing guaranty, each new purchase is a distinct debt; hence the guarantor could terminate or revoke the guaranty to avoid liability for future transactions. In this case, these postpetition new extensions of credit were not binding prepetition.

The Court concludes that Mr. Osbourn's and Mr. Shaffer's chapter 7 discharge orders did not discharge liability under the guaranty for the postpetition extensions of credit.[4]

The Court will issue a separate order based on the conclusions in this Opinion.

The Clerk is directed to send copies of this Opinion to Ann E. Schmitt, Culbert & Schmitt, 30C Catoctin Circle SE, Leesburg, VA 20175; Douglas W. Harold, Jr., 1114 Fairfax Pike, Suite 10, White Post, VA 22663; Michael Gerald Shaffer, 627 Granny Smith Road, Linden, VA 22642; David Eugene Osbourn, Jr., 203 West Main Street, Front Royal, VA 22630; and Dulles Electric & Supply Corporation, 22570 Shaw Rd., Ste. 150, Sterling, VA 20166-4393.

Entered: February 27, 2018

/s/ Rebecca B Connelly

Rebecca B. Connelly
U.S. Bankruptcy Judge

---

[4] The Court decides the narrow issue of whether the liability at issue was discharged. The Court makes no findings or conclusions whether the guaranty is otherwise enforceable against the debtors under the relevant state law.